Kirk Bradley BELL, Appellant,

v.

STATE of Indiana, Appellee.

No. 584 S 209.

Supreme Court of Indiana.

July 16, 1986.

Charles F. Leonard, Deputy Public Defender, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from a conviction of murder, I.C. § 35–42–1–1. A jury tried the case. Appellant received a sentence of forty years.

Appellant raises four issues on appeal: (1) whether trial court erred in denying his motion for separation of the witnesses prior to the selection of the jury; (2) whether trial court erred in denying his motion for continuance due to an alleged discovery violation; (3) whether trial court erred in permitting the State's rebuttal witness Isaac Boone to testify; (4) and whether trial court erred in ordering a four day recess at the conclusion of the evidence.

These are the facts from the record that support the determination of guilt. On the night of June 3, 1983, appellant and the victim, Freddie Lymon were at the Blue Diamond Rib Bar. They argued near the cigarette machine. Thereafter, appellant drew his gun, and the victim ran out of the bar. Appellant pursued him with a gun in one hand and a can of beer in the other hand. Outside the bar, appellant fired several shots. Thereafter, the victim, who had been hiding, peeked around the corner of the building. Appellant fired again and wounded the victim. The victim was found several houses away from the bar. At that location the investigating officers found a small caliber handgun on the ground. The victim died seven days later as a result of a gunshot wound to the neck.

## I

Appellant argues that the trial court erred in denying his motion for separation of witnesses prior to jury selection.

The record reveals that appellant moved to separate the witnesses before jury selection. The trial court denied the motion. After selection of the jury, appellant moved for mistrial on the basis that the witnesses were in the courtroom during jury selec-

tion. The trial court also denied this motion.

The kernel of appellant's claim is that, because the witnesses were present during the questioning of prospective jurors, the witnesses had an opportunity to discern possible questions at trial and to discuss such questions with each other prior to testifying.

■ Normally, voir dire examination leans toward the more general and abstract. The testimony of the witnesses while under oath on the other hand is specific with regard to the time, the place, and the character of events. It is also quite normal for all witnesses before testifying, to have some knowledge of the general nature of the case upon trial for which they have been summoned. The purpose served by separating witnesses at trial is to prevent the testimony of one witness from influencing that of another. *Dixon v. State* (1976), 264 Ind. 651, 348 N.E.2d 401. The timing of the separation order is a matter appropriately left to the trial judge in dealing with the vagaries of the particular trial. While appellant's concern is not without some basis, we find it insufficient as a premise from which to infer a prejudice warranting appellate relief.

## II

Appellant argues that the trial court erred in not granting him a continuance due to an alleged discovery violation.

■ There was no violation of discovery here. The alleged violation concerned the disclosure of eyewitness, Henry Harris a/k/a Spike. Officer Coleman mentioned Spike in his deposition. A month prior to trial, the State and appellant's counsel issued subpoenas in order to depose Spike. After much difficulty in locating Spike and in securing his presence for a deposition, the trial court issued a bench warrant for the witness. Spike appeared in court on November 21, 1983, the day before the trial. Appellant's counsel deposed the witness under oath, and immediately thereafter, the trial court specifically inquired of

appellant's counsel if he desired a continuance. The trial court also told counsel that he would not grant any continuance on the day of trial, November 22, 1983. Appellant's counsel chose not to move for a continuance. On the day of trial, appellant's counsel moved for a continuance or in the alternative for the exclusion of the witness' testimony.

In light of these circumstances, we concluded that appellant enjoyed the benefits intended to be afforded by pre-trial discovery.

### III

Appellant argues that the trial court erred in permitting State's witness Isaac Boone to testify on rebuttal.

Rebuttal evidence is limited to that which tends to explain, contradict, or disprove evidence offered by the adverse party. *Wells v. State* (1982), Ind., 441 N.E.2d 458, *Norton v. State* (1980), 273 Ind. 635, 408 N.E.2d 514. The scope of rebuttal is a matter left to the discretion of the trial court and failure to limit its scope is reversible error only for abuse of that discretion. *Wells, supra: Norton, supra.*

The trial court may permit a rebuttal witness to testify even though he is not named on the State's list of witnesses, as it is impossible to anticipate that such witnesses will be called at all. *See Smith v. State* (1982), Ind., 439 N.E.2d 634; *Tillman v. State* (1980), 274 Ind. 39, 408 N.E.2d 1250; *Thompkins v. State* (1978) 270 Ind. 163, 383 N.E.2d 347; *Chatman v. State* (1975), 263 Ind. 531, 334 N.E.2d 673.

Even though the trial court permits a witness to testify during rebuttal regarding a matter which, in fact, is not in rebuttal but is a matter related to the state's case in chief, the irregularity will not be treated as reversible error unless under the circumstances the appellant was prevented from presenting rebuttal evidence thereto. *Shelby v. State* (1972), 258 Ind. 439, 281 N.E.2d 885, 887; *Griffith v. State* (1959), 239 Ind. 321, 157 N.E.2d 191, 192.

In *Shelby supra,* the court explained that the content of the challenged testimony would have been more usually and properly admitted in the State's case-in-chief. However, even under those circumstances the Court did not believe that reversal was warranted because the appellant had an opportunity to rebut the challenged testimony.

■ Here, the circumstances are even less compelling. The content of the challenged testimony was a mix of proper rebuttal evidence and State's case-in-chief evidence. Appellant did not request an opportunity to rebut the challenged testimony; consequently, we do not believe the trial court's action impinged appellant's substantial rights.

### IV

Appellant argues that the trial court erred in ordering a four day recess at the conclusion of the evidence.

This jury trial commenced on Tuesday, November 22, 1983. At the conclusion of the evidence on Wednesday, November 23, 1983, at 6:00 p.m., the trial court, on its own motion, continued the case until Monday, November 28, 1983. The trial court stated that the Thanksgiving Holiday was the reason for the continuance. Appellant objected to the continuance on the grounds that the delay would inhibit the jury's memory and ability to evaluate the evidence and that the jurors would be exposed to prejudicial extraneous influences. The trial court admonished the jury to not discuss the case with anyone and to avoid reading or listening to any accounts of the case.

Appellant's first contention that the delay would inhibit the jury's memory and ability to evaluate the evidence warrants careful consideration. Obviously, a delay could be of such a magnitude that a jury could not render a reasoned and just verdict based upon an accurate recollection of the evidence. Whether a delay is of such magnitude depends upon an analysis of several factors:

(1) the actual length of the delay;

(2) the position of the delay in the progress of the trial;

(3) the complexity of the evidence;

(4) the complexity of the legal issues, and

(5) the reason for the delay.

The importance of the actual length of the delay is clear. The jury's recollection of the evidence diminishes as the delay lengthens.

The later the delay is in the progress of the trial, the greater the probability that it will impede the jury's recollection of the evidence.

The greater the complexity of the evidence and the legal issues, the greater the need for jury recollection of evidentiary details and their relationship to the legal issues in the case. Consequently, the length of permissible delay is much less in a complex case. The reason for the delay is important because sometimes the trial court may sanction a delay as a means of protecting the overall fairness of the trial. Consequently, the length of permissible delay is much less when the reason for the delay bears no relationship to the fairness of the trial.

Here, the length of the delay is slightly more than four and a half days. The delay occurred at the close of all the evidence, but before final arguments. Consequently, the position of the delay in the progress of the trial is weighted slightly in favor of the proposition that the delay was excessive. However, the evidence and legal issues in this case were not complex. The State charged appellant with murder, the factual basis of which was the shooting of the victim outside a bar. Appellant relied on the defense of self-defense. The essence of the jury's task was to determine which of two relatively simple fact patterns to believe. Consequently, the degree of the complexity of the evidence and the legal issues is weighted against the proposition that the delay was excessive, especially in light of the fact that final arguments would refresh the jury's recollection.

Finally, the reason for the delay was partially justifiable on legal grounds that bore a direct relationship to the fairness of the trial. If the trial court had not continued the case, the jury would have commenced deliberations late in the evening when tired and the deliberations would have interfered with the Thanksgiving holiday. To place such a burden on the jury would have surely adversely influenced the jury's perception of the trial court and the parties, thereby, giving rise to the possibility of a verdict influenced by jury animosity. However, this reason does not provide explanation for not completing the case on the Friday and Saturday after Thanksgiving. The Friday and Saturday delay falls within the realm of convenience bearing little or no relationship to overall fairness of the trial.

■ After consideration of all the pertinent factors, we do not believe that the delay in this case was impermissibly excessive.

■ Appellant's second contention is that the delay exposed the jury to the possibility of prejudicial outside influences.

Indiana does not take the position the the mere possibility that extrinsic evidence could have affected the verdict is sufficient to require a mistrial ... Our Supreme Court in *Lindsey v. State* (1973), 260 Ind. 351, 295 N.E.2d 819, held that whenever prejudicial publicity is brought to the attention of the court, "at a minimum it must, at that time, interrogate the jury to determine its exposure, and that jurors acknowledging exposure should be examined individually to determine the extent of such exposure and the likelihood of prejudice resulting therefrom" 295 N.E.2d at 823. See also *Sacks v. State* (1977), 172 Ind., App., 185, 360 N.E.2d 21.

*Fox v. State* (1982), Ind.App., 439 N.E.2d 1385. Here, after the trial reconvened, appellant did not call to the attention of the trial court any occurrence involving preju-

dicial publicity. Consequently, appellate review is foreclosed.

Conviction affirmed.

GIVAN, C.J., and PIVARNIK, SHEPARD and DICKSON, JJ., concur.