**Charles H. SMITH, Appellant,**

v.

**Debbie Jo SMITH, Appellee.**

**No. 54A04-8902-CV-28.**

Court of Appeals of Indiana,
Fourth District.

Dec. 12, 1989.

James R. Earnshaw, Harding, Henthorn & Harris, Crawfordsville, for appellant.

Terry E. Harris, Young, Harris & Harvey, Crawfordsville, for appellee.

MILLER, Judge.

Charles H. Smith appeals the dismissal, pursuant to Ind.Rules of Procedure, Trial Rule 12(B)(6), of his suit based on an Ind. Rules of Procedure, Trial Rule 60(B)(7) motion which alleged the prospective application of the property settlement portion of the decree dissolving his marriage to Debbie Jo Smith is inequitable. The parties entered into a property settlement agreement which was merged into the divorce decree. The portion of the property agreement/divorce decree complained of provided that Debbie pay Charles $9,500.00, his share of the equity in the marital residence, upon the occurrence of either of two conditions—1) her remarriage, or 2) the sale of the house. Debbie was awarded custody of the parties' two minor children. Debbie has been living with a man—and has not consecrated the relationship by marriage—for three years. They have recently moved out of Charles's and Debbie's old marital residence into a new home. Rather than putting Charles's and Debbie's old house up for sale, Debbie has rented it. Charles alleges these conditions make the prospective application of the divorce decree inequitable and he is therefore entitled to relief under T.R. 60(B)(7). We affirm.

### Issue

Charles raises one issue. Restated, it is whether the trial court's grant of the T.R. 12(B)(6) motion was error.[1]

---

1. Actually Charles argues that the court erred by failing to hold an evidentiary hearing on his T.R. 60(B) motion. He directs our attention to the following mandatory language contained in T.R. 60(D):

   In passing upon a motion allowed by subdivision (B) of this rule the court *shall* hear any pertinent evidence, allow new parties to be served with summons, allow discovery, grant relief as provided under Rule 59 or otherwise as permitted by subdivision (B) of this rule. (emphasis ours)

   Charles argues that in the present case, two hearings were contemplated under the law. One on Debbie's T.R. 12(B)(6) motion and one for his T.R. 60(B)(7) motion. However, he cites no authority, nor are we aware of any, that would mandate what we consider to be an absurd result. We can not fathom that the law mandates an evidentiary hearing on the merits of the T.R. 60(B) motion even when the trial court has determined that the allegations in the pleadings fail to state a claim upon which relief may be granted. Such a result would defeat T.R. 12(B)(6)'s purpose of weeding out meritless claims.

   Furthermore, we direct Charles's attention to the language under T.R. 12(B) which permits him as of right to amend his pleadings within 10 days of an unfavorable T.R. 12(B)(6) ruling. We agree with the trial court that the allegations in Charles's complaint are insufficient to survive a T.R. 12(B)(6) motion. Had Charles wished to make allegations that would entitle him to relief under the law—e.g. allegations of fraud or duress—he should have amended his complaint to include such allegations.

### Facts

Charles and Debbie divorced in April of 1985. They entered into a property settlement agreement[2] that was merged into their dissolution decree. Debbie was awarded custody of the marriage's two children, Scott Herman (born April 4, 1971) and Stacy Rae (born January 22, 1976). The agreement provided that Debbie be awarded the marital residence subject to the following conditions:

> (a) If the Wife shall at any time sell the subject real estate, the Husband shall be paid from the proceeds of such sale, the sum of Nine Thousand Five Hundred ($9,500.00) Dollars, which claim of the Husband shall be a lien upon the proceeds of such sale, or
>
> (b) If the Wife shall remarry, even though she may [not?] sell the real estate, she shall within one (1) year from the date of such remarriage, pay to the Husband the sum of Nine Thousand Five Hundred ($9,500.00) Dollars, . . . .

In July of 1988, Charles filed his Verified Motion for Relief from Judgment and for Modification of Decree. The motion set forth the allegations that although Debbie had not remarried, she resided with a man for approximately three years; that she and the man had moved out of the subject real estate into a newly constructed house; and, that Debbie was not attempting to sell the Smith residence but rather was leasing the property. Charles's motion alleged that Debbie's conduct was such that "it was no longer equitable that the judgment entered by the Court on April 29, 1985 should be given prospective application."

### Decision

The basic purpose of a T.R. 12(B)(6) motion to dismiss is to test the legal sufficiency of the complaint to state a redressable claim. Thus, the motion is properly utilized to test the legal sufficiency of the complaint; or stated differently, to test the law of the claim, not the facts that support it. *Anderson v. Anderson* (1979), Ind.App., 399 N.E.2d 391. We review a T.R. 12(B)(6) dismissal to determine whether plaintiff's complaint stated any set of allegations upon which the trial court below could have granted relief. *Baker v. American States Ins. Co.* (1981), Ind.App., 428 N.E.2d 1342.

T.R. 60(B)(7) provides for relief from judgment if it is no longer equitable that the judgment should have prospective application. In *State v. Martinsville Development Co., Inc.* (1977), 174 Ind.App. 157, 366 N.E.2d 681, we held a that in order to obtain relief under T.R. 60(B)(7), is necessary that the original judgment have *prospective application*—meaning that, "a person's right to do or not to do some act is continuously affected by the operation of the judgment, in the future; or *that the judgment is specifically directed toward some event which is to take place in the future . . . .*" *Id.* 174 Ind.App. at 163, 366 N.E.2d at 685. In *Ingoglia v. Fogelson Companies, Inc.* (1988), Ind.App., 530 N.E.2d 1190, we noted that a consent judgment could be modified under T.R. 60(B)(7) if the judgment was provisional, tentative, and involved continuing "supervision of changing conduct or conditions." *Id.* 530 N.E.2d at 1200.[3]

In the instant case, the divorce decree provided that Charles receive his share of the equity in the marital residence upon the occurrence of two conditions entirely under Debbie's control. In *Caddo v. Caddo* (1984), Ind.App., 468 N.E.2d 593, we

---

**2.** We believe the following portion of the settlement agreement warrants an inference that Charles entered into the agreement without the benefit of attorney consultation:

> 8. Throughout the filing and pendency of these proceedings, the Wife and petitioner has been represented by counsel, and the Husband and respondent has elected not to be represented by counsel. No advice or legal representations have been made to the respondent by petitioner's counsel, and the Agreement was entered into between the parties, each of their own volition and free will, without duress or coercion of any kind, and each understands that this Agreement, insofar as it relates to the disposition of property between them, is a full and final disposition not subject to later change or modification.

**3.** While the present judgment has prospective application, it is not of a tentative nature. The conditions that trigger the payment obligation are simply left to Debbie's discretion.

**300**

reviewed a property division where the wife's obligation to pay the husband his share of the equity in the marital residence did not accrue until the occurrence of one of the following three conditions: 1) her remarriage, 2) the sale of the residence, or 3) the emancipation of the youngest child. We reversed holding that the decree failed to establish the parties' property rights with certainty at the time of the divorce as required by IND.CODE 31–1–11.5–11.

Similarly, in *Henderson v. Henderson* (1980), Ind.App., 401 N.E.2d 73, we reversed a property division that gave the wife the discretion, when, if ever, to sell the house triggering her obligation to pay the husband for his interest therein. However, we noted our decision would have been different had the parties entered into an agreement as to the disposition of their property pursuant to IND.CODE 31–1–11.-5–10.

A property settlement agreement which is incorporated into a court-approved final divorce decree is a binding contract. *Duran v. Komyatte* (1986), Ind.App., 490 N.E.2d 388 (*trans. denied*). The Indiana Dissolution of Marriage Act, I.C. 31–1–11.-5–10, expressly encourages settlement agreements. *Flora v. Flora* (1975), 166 Ind.App. 620, 337 N.E.2d 846.

Parties have more flexibility in crafting their own property settlements than do divorce courts. For example, a trial court may order spousal maintenance only after a showing of incapacitation. But, parties crafting their own agreement may provide for maintenance without such a showing. *Steele v. Davisson, Davisson & Davisson* (1982), Ind.App., 437 N.E.2d 491.

The disposition of property settled by agreement and incorporated and merged into the decree shall not be subject to subsequent modification by the court except as the agreement itself may prescribe or the parties may subsequently consent. I.C. 31–1–11.5–10(c). In the absence of fraud, duress, or undue influence, a property settlement agreement entered into pursuant to I.C. 31–1–11.5–10 may not be modified or revoked. *In re Marriage of Bradach* (1981), Ind.App., 422 N.E.2d 342 (fraud and undue influence); *Hunter v. Hunter* (1948), 118 Ind.App. 553, 82 N.E.2d 272 (duress).

*In re Marriage of Bradley* (1982), Ind. App., 433 N.E.2d 54, involved a property settlement agreement where the marital home was to be sold—and the proceeds divided—upon the occurrence of certain conditions. One of the conditions triggering the sale was the husband's remarriage. The wife argued that because the husband was living with a woman and enjoying all the benefits of marriage without incurring the legal consequences, he was defrauding her of her right to have the property sold. Noting that the law of Indiana encourages parties to reach agreements upon dissolution of marriage, we affirmed the trial court's enforcement of the agreement.

In the present case, Charles, has not alleged he was the victim of fraud, undue influence, or duress in entering into the settlement agreement. The agreement is unambiguous—Debbie's obligation to pay Charles the $9,500.00 does not accrue until the occurrence of certain conditions, none of which have accrued. The prospective application of the decree may be inequitable. But, it is precisely what Charles, without benefit of attorney consultation, bargained for. Charles has failed to state a claim upon which relief may be granted. Debbie's motion, pursuant to T.R. 12(B)(6), was properly granted.

Therefore, we affirm.

SHIELDS, P.J., and CONOVER, J., concur.