**Ronald VOIGT, Appellant–Petitioner,**

v.

**Sharon VOIGT, Appellee–Respondent.**

No. 79A02–9311–CV–621.

Court of Appeals of Indiana,
Second District.

Dec. 28, 1994.

John H. Meyers, Lafayette, for appellant.

Carolyn S. Holder, Holder and Davis, Lafayette, for appellee.

## OPINION

SULLIVAN, Judge.

Ronald Voigt (Ronald) appeals the trial court's dismissal of his petition to modify the spousal maintenance portion of the final decree dissolving his marriage to Sharon Voigt (Sharon). We reverse.

In May of 1991, Ronald filed a petition for dissolution of marriage. His wife, Sharon, filed a counter-petition. Later, Ronald and Sharon executed a Property Settlement Agreement (the Agreement) dated July 17, 1992. The spousal maintenance provision of the Agreement reads as follows:

> "The Husband shall pay to the Wife, as maintenance, the sum of $400.00 per week until the death of the Wife, the remarriage of the Wife, or until the Wife attains the age of sixty-five years. Said obligation shall survive the death of the husband."
> Record at 35.

A subsequent paragraph, paragraph 20, of the Agreement provides:

> "A modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement. Failure of either party to insist upon strict performance of any of the provisions of this Agreement shall not be construed as a waiver of any subsequent default of the same or similar nature." Record at 37.

The trial court entered a dissolution decree, which approved and incorporated the Agreement.

Ronald then filed a Petition to Modify the Decree of Dissolution, in which he requested a modification of the maintenance provision. Subsequently, Sharon moved to dismiss Ronald's petition. After a hearing, the trial court granted Sharon's motion to dismiss pursuant to Rule 12(B)(6) of the Indiana Rules of Trial Procedure. In doing so, the trial court determined that the provision regarding spousal maintenance was unambiguous, that the parties' intent was "easily determined by the language used therein," and that it could not modify the maintenance provision without both parties' consent. Record at 96. This appeal ensued.

The basic purpose of a Rule 12(B)(6) motion to dismiss is to test the legal sufficiency of the complaint to state a redressable claim. *Bowman v. Bowman* (1991) 1st Dist. Ind.App., 567 N.E.2d 828, 830; *Smith v. Smith* (1989) 4th Dist. Ind.App., 547 N.E.2d 297. Stated differently, it tests the law of the claim, not the facts which support it. *Bowman, supra* at 830; *Smith, supra* at 299. We review a Rule 12(B)(6) dismissal to determine whether plaintiff's complaint would permit proof of any set of facts upon which relief would be appropriate. *Bowman, supra* at 830; *Smith, supra* at 299.

I.C. 31–1–11.5–9(c) gives a trial court the authority to award spousal maintenance upon a finding of physical or mental incapacity pursuant to I.C. 31–1–11.5–11(e). The latter provision declares that "the court may find that [spousal maintenance] is necessary during the period of incapacity, subject to further order of the court." *See* I.C. 31–1–11.5–9(c); I.C. 31–1–11.5–11(e) (Burns Code Ed. Supp.1994). *See also Pfenninger v. Pfenninger* (1984) 1st Dist. Ind.App., 463 N.E.2d 1115, 1119. *Accord Paxton v. Paxton* (1981) 2d Dist. Ind.App., 420 N.E.2d 1346. Nevertheless, the parties may enter into an agreement for maintenance absent a finding of incapacity. I.C. 31–1–11.5–10(a) (Burns Code Ed. Repl.1987). *Accord Baker*

*v. Baker* (1990) 1st Dist. Ind.App., 552 N.E.2d 525, 527, *trans. denied; Pfenninger, supra,* 463 N.E.2d at 1119; *Hull v. Hull* (1982) 2d Dist. Ind.App., 436 N.E.2d 841. Such agreements are not limited to circumstances of financial or physical incapacity and are binding upon the parties if incorporated into a court-approved final divorce decree. *Baker, supra* at 527; *Smith, supra,* 547 N.E.2d at 300; *Pfenninger, supra* at 1119. The parties are free "to make continuing financial arrangements in a spirit of amicability and conciliation." *Baker, supra* at 527; *Pfenninger, supra* at 1119.

In this case, the trial court did not enter its decree based upon a finding of incapacity. Instead, the parties entered into a property settlement agreement, which the trial court subsequently approved and incorporated into its divorce decree. Accordingly, Ronald and Sharon are bound by the terms of the agreement they signed.

We now address Ronald's argument that the trial court may modify the spousal maintenance provisions in the Agreement, and that nothing in the Agreement prevents a request for such a modification. This court has determined that a previously agreed-to spousal maintenance provision in a settlement agreement, which is approved and incorporated into a trial court's dissolution decree, is subject to modification in the event of a substantial change of conditions rendering the terms of the agreement unreasonable. *Baker, supra,* 552 N.E.2d at 527; *Pfenninger, supra,* 463 N.E.2d at 1121; [1] *see also Myers v. Myers* (1990) Ind., 560 N.E.2d 39, 42.[2] Provisions for maintenance are subject to modification whether entered pursuant to a settlement agreement or upon an independent decree of the court. *DeVoe v. DeVoe* (1988) 2d Dist. Ind.App., 531 N.E.2d 1200, 1202; *Pfenninger, supra* at 1121.[3]

Sharon argues that *Bowman, supra,* 567 N.E.2d 828, requires us to affirm the trial court's dismissal. Conversely, Ronald contends that the present case is distinguishable from *Bowman* upon its facts. He also strongly urges us to find that *Bowman* was decided wrongly, asserting that it cannot truly be reconciled with other Indiana cases, including *Pfenninger* and *Myers.*

1. The *Pfenninger* court recognized that such a holding was consistent with earlier language found in *Wilhelm v. Wilhelm* (1979) 4th Dist. Ind.App., 397 N.E.2d 1079:

   "A degree of flexibility was retained for maintenance awards, but the legislature sought to achieve finality in regard to the property division. This approach is consistent with the purposes behind the respective awards. [Citations omitted.]

   A maintenance or alimony award is designed to help provide for a spouse's sustenance and support; therefore, conditions are often attached to these awards which permit their alteration in light of changes in circumstances." 397 N.E.2d at 1081.

   The *Pfenninger* court also indicated that its holding was consistent with this general rule:

   "Ordinarily the court has the power to modify a decree for [maintenance], even though it is based upon or incorporates an agreement for payments thereof. On the other hand, the court does not have the power to modify a true property settlement or a decree incorporating it, even though it provides for periodic payments as distinguished from a lump sum or a transfer or property, unless the settlement itself authorizes a modification by the court...." 463 N.E.2d at 1121 (citing 24 *Am. Jur.2d Divorce and Separation* § 846 (1983)) (emphasis in original).

2. Indiana courts have recognized a distinction between maintenance and property division provisions in settlement agreements. For example, in *Smith v. Smith* (1989) 4th Dist. Ind.App., 547 N.E.2d 297, this court determined that property division provisions within a settlement agreement could not be modified absent fraud, undue influence, or duress in entering into the settlement agreement. The *Smith* court noted that "[t]he disposition of property settled by agreement and incorporated and merged into the decree shall not be subject to subsequent modification by the court except as the agreement itself may prescribe or the parties may subsequently consent." 547 N.E.2d at 300. *See* I.C. 31–1–11.5–10(c) (Burns Code Ed.Repl.1987). The *Smith* court then concluded: "In the absence of fraud, duress, or undue influence, a property settlement agreement entered into pursuant to I.C. 31–1–11.5–10 may not be modified or revoked." 547 N.E.2d at 300 (citing *In re Marriage of Bradach* (1981) 4th Dist. Ind.App., 422 N.E.2d 342; *Hunter v. Hunter* (1948) 118 Ind.App. 553, 82 N.E.2d 272). Accordingly, *Smith* held that the trial court properly dismissed a husband's attempted modification pursuant to Rule 12(B)(6). *Smith, supra* at 300.

3. It should be noted that the parties or either of them may not modify what is in fact an agreed mechanism for property distribution, by labelling it "maintenance".

In *Bowman*, the First District of this court held that a nonmodifiable agreement for spousal maintenance[4] bound the parties. *Bowman* is a case in which a former husband argued that he could modify a previously agreed-to spousal maintenance provision in his dissolution decree because orders for spousal maintenance are subject to modification under I.C. 31–1–11.5–17(a) (Burns Code Ed.1987) and because our Supreme Court previously had determined that a child support order entered pursuant to the terms of a settlement agreement could be modified despite seemingly contrary language in the agreement. *Meehan v. Meehan* (1981) Ind., 425 N.E.2d 157, 160.[5] The *Bowman* court rejected those arguments, first noting that I.C. 31–1–11.5–17(a) authorized only the modification of a spousal maintenance award made after a trial court's finding of incapacitation, and that it did not authorize the modification of such awards predicated upon an agreement of the parties. The *Bowman*

court then distinguished *Meehan* by recognizing *Meehan* dealt with child support orders, which the court indicated are "governed by entirely different principles of public policy" than are spousal support orders. *Bowman, supra* 567 N.E.2d at 831.[6]

■ We decline Ronald's invitation to determine that *Bowman* was decided incorrectly, and adhere to *Bowman* for the proposition that a trial court may not modify a spousal maintenance agreement which unambiguously states that it cannot not be modified. Moreover, we disagree with Ronald's assertion that *Bowman* truly cannot be reconciled with *Pfenninger* and its progeny.[7] The distinction lies in the fact that the property settlement agreement in *Bowman* specifically and unambiguously precluded modification of the maintenance provision, while the agreements in each of the other cases do not mention modification.[8] It is manifest that the court's cardinal concern in *Bowman*

---

**4.** In *Bowman,* the pertinent portion of the agreement reads as follows:

> "The Wife shall be declared the separate owner of [a residence in Wabash County], and Husband shall execute a Quitclaim Deed to convey said residence to the Wife. That the Husband shall pay for said mortgage on said real estate payable to [a local bank], and hold the Wife harmless thereon. That the payment of said mortgage constitutes support of said Wife in that the Wife is physically incapacitated to the extent that the ability to support herself is materially affected, *it being understood that this obligation shall not in any way be modified.*" 567 N.E.2d at 829 (emphasis in original).

**5.** The *Pfenninger* court found no difference between a child support order and a maintenance award with regard to modification because both are "subject to modification upon a showing of a change of conditions so substantial and continuing as to make the terms unreasonable." 463 N.E.2d at 1121. The fact that the award was entered as a result of an agreement of the parties made no difference, and did not deprive the parties their "right to seek modification in a proper case." *Pfenninger, supra* at 1121.

**6.** For additional discussion of *Bowman,* see *Michael G. Ruppert & Monty K. Woolsey, The Continuing Evolution of Indiana's Family Law in 1991,* 25 *Ind.L.Rev.* 1243, 1258 (1992).

**7.** It is important to note that the cases allowing previously agreed-to spousal maintenance provisions to be modified do so by judicial fiat, not as

a result of a specific statutory authorization. In fact, the court in *Bowman* determined as follows:

> "By its terms, I.C. 31–1–11.5–17(a) only applies to authorize the modification of an award of spousal maintenance made upon a trial court's finding of incapacitation. It does not authorize the modification of awards of spousal maintenance predicated upon an agreement of the parties." 567 N.E.2d at 830.

*Pfenninger, Baker,* and *DeVoe* cite no statutory authority for their determinations that previously agreed-to spousal maintenance provisions may be modified. *E.g., Baker, supra,* 552 N.E.2d at 528 (citing *Pfenninger, supra,* 463 N.E.2d 1115 and *DeVoe, supra,* 531 N.E.2d 1200); *Pfenninger, supra,* 463 N.E.2d at 1120–21 (discussing prior case law and drawing comparisons to child support modification in *Meehan, supra,* 425 N.E.2d 157). We note, however, that *Baker* cites I.C. 31–1–11.5–17(a) for the proposition that a spouse seeking such modification must show "changed circumstances so substantial and continuing as to make the terms unreasonable." 552 N.E.2d at 528.

**8.** The decree in *Pfenninger* contained the following provision, to which both the husband and the wife agreed before being incorporated as part of the court's order: "Husband shall pay to wife the sum of $432 per week for a period of 1040 weeks commencing on the 18 [sic] day of March, 1981, and continuing on each Wednesday thereafter until paid...." The balance of the lengthy agreement addressed termination provisions upon death, specifically in regard to the husband's life insurance policy. 463 N.E.2d at 1116–17.

was preservation of the parties' freedom to contract. The *Bowman* court specifically recognized that settlement agreements that are merged and incorporated into divorce decrees are binding contracts, and that the Indiana Dissolution of Marriage Act expressly encourages settlement agreements. *Bowman, supra,* 567 N.E.2d at 831 (citing *Smith, supra* 547 N.E.2d at 300). *See* I.C. 31–1–11.5–10 (Burns Code Ed.Repl.1987).

The foregoing discussion brings us to the determinative question in this case; namely, whether any provision in the instant property settlement agreement unambiguously states that the agreement cannot be modified. Paragraph 20 of the Agreement provides, in part, that "[a] modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement." Record at 37. Sharon argues that this provision makes a modification effective only if "both parties agreed and documented their agreement by writing signed by both of them...." Brief of Appellee at 6. Ronald counters by first noting that this language does not refer specifically to the maintenance provision, but rather to the entire Agreement. He also asserts that the paragraph merely requires the parties to use the same formality with regard to any subsequent changes as they had used in executing the Agreement. He maintains that such language is "typical of boilerplate provisions that address the form of parties' subsequent agreements modifying an original agreement," and that it is "far different than the express no-modification provision in *Bowman* that was exclusively and explicitly included in the maintenance provision." Reply Brief of Appellant at 6.

 We agree that paragraph 20 is very different from the express no-modification provision to which the parties agreed in *Bowman*. Paragraph 20 does nothing more than outline how Ronald and Sharon would modify the Agreement should they choose to do so at some point in the future. It does not unambiguously state that the parties could never subsequently modify the Agreement. Because the spousal maintenance agreement does not expressly prohibit modification and

because this court consistently has held that trial courts may modify previously agreed-to spousal maintenance provisions in final divorce decrees, we hold that the trial court erred by dismissing Ronald's maintenance modification petition.

By so holding, we do not require parties facing such situations to use language identical to that used in *Bowman* to ensure that their agreements will not be modified. We merely hold that the language used in the instant agreement is insufficient under Indiana law to foreclose modification. Upon remand, Ronald must carry the burden of showing "a change of conditions so substantial and continuing as to make the terms of [the Agreement] unreasonable" before the trial court might modify the spousal maintenance provisions set forth in the final decree. *Baker, supra,* 552 N.E.2d at 528; *Pfenninger, supra,* 463 N.E.2d at 1121.

Ronald's complaint states a claim upon which the trial court below could have granted relief. *Bowman, supra,* 567 at 830; *Smith, supra,* 547 at 299. Accordingly, we reverse the trial court's dismissal pursuant to T.R. 12(B)(6), and remand for further proceedings consistent with this opinion.

FRIEDLANDER and KIRSCH, JJ., concur.